## ASSIGNMENT OF MANAGEMENT AGREEMENT

THIS ASSIGNMENT OF MANAGEMENT AGREEMENT (this "**Assignment**") is made as of the 3rd day of October, 2006, by **PROMOTORA DE INMUEBLES DEL CARIBE, S.A. DE C.V., CONSORCIO INMOBILIARIO CANCÚN, S.A. DE C.V., DESARROLLO TURÍSTICO PIRÁMIDES CANCÚN, S.A. DE C.V., COZUMEL CARIBE, S.A. DE C.V., INMOBILIARIA CANCÚN CARIBE, S.A. DE C.V., COMERCIALIZADORA Y DESARROLLADORA OCEAN, S.A. DE C.V., DESARROLLADORA INMOBILIARIA DEL SUR, S.A. DE C.V.,** and **SERVICIOS ADMINISTRATIVOS ETISA, S.A. DE C.V.**, each a variable capital stock corporation (*sociedad anónima de capital variable*) duly organized and validly existing under the laws of the United Mexican States ("**Mexico**") and having an address at c/o Insurgentes Sur 1999, Colonia Guadalupe Inn, Delegación Alvaro Obregón, México, Distrito Federal 01020 (collectively the "**Issuers**") to **LASALLE BANK NATIONAL ASSOCIATION**, a national banking association, having an address at 135 South LaSalle Street, Suite 1625, Chicago, Illinois 60603, in its capacity as note trustee ("**Trustee**") for the benefit of Noteholders (as herein defined), and is consented and agreed to by **OPERACIÓN Y SUPERVISIÓN DE HOTELES, S.A. DE C.V.**, a variable capital stock corporation duly organized and validly existing under the laws of Mexico, having an address at Insurgentes Sur 1999, Colonia Guadalupe Inn, Delegación Alvaro Obregón, México, Distrito Federal 01020 ("**Manager**").

### RECITALS:

A. Pursuant to certain promissory notes, dated of even date herewith (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Notes**"), executed by Issuers and issued pursuant to that certain Note Indenture dated as of the date hereof between Issuers and Trustee (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Indenture**"), Issuers have become indebted to Noteholders (as defined in the Indenture) in the original principal amount of One Hundred Three Million and No/100 Dollars ($103,000,000).

B. Such indebtedness, the "**Note Indebtedness**", which Note Indebtedness is secured by that certain Trust Agreement dated October 3, 2006 (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Security Trust Agreement**") and further evidenced, secured or governed by other instruments and documents executed in connection with the issuance of the Notes (together with the Notes, the Indenture and the Security Trust Agreement, collectively, the "**Financing Documents**").

C. Pursuant to those certain Management Agreements listed on <u>Exhibit A</u> attached hereto (as may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms and provisions hereof, collectively, the "**Management Agreements**"; true and correct copies of such Management Agreements are attached hereto as <u>Exhibit B</u>), Issuers employed Manager exclusively to lease, develop, operate and manage those certain properties listed on <u>Exhibit A</u> attached hereto (collectively, the "**Properties**") and Manager is entitled to certain management fees (the "**Management Fees**") thereunder.

D.    Initial Noteholder is willing to purchase the Notes and extend credit to Issuers provided that Manager subordinates its interest under the Management Agreements in lien and payment to the Indenture and the other Financing Documents as set forth below.

## AGREEMENT

For good and valuable consideration the parties hereto agree as follows:

1.    **Assignment of Management Agreement.** As additional collateral security for the Note Indebtedness and with the consent of Manager, Issuers hereby conditionally transfer, set over and assign to Trustee for the benefit of the Initial Noteholder, all of Issuers' right, title and interest in and to the Management Agreements, said transfer and assignment to automatically become a present, unconditional assignment, at Trustee's option, upon an Event of Default by Issuers under the Indenture or any of the other Financing Documents.

2.    **Subordination of Management Agreement.** The Management Agreements and any and all liens, rights and interests (whether choate or inchoate and including, without limitation, all mechanic's and materialmen's liens under applicable law) owed, claimed or held, by Manager in and to the Properties, are and shall be in all respects subordinate and inferior to the liens and security interests created, or to be created, in favor of Trustee for the benefit of Noteholders, and securing the repayment of the Notes and the performance of the obligations under the Indenture and the other Financing Documents, and all renewals, extensions, increases, supplements, amendments, modifications or replacements thereof.

3.    **Termination**. At such time as the Note Indebtedness is paid in full and the Security Trust Agreement is released or assigned of record, this Assignment and all of Trustee's right, title and interest hereunder with respect to the Management Agreements shall terminate.

4.    **Estoppel**. Manager represents and warrants that (a) the Management Agreements are in full force and effect and have not been modified, amended or assigned other than pursuant to this Assignment, (b) neither Manager nor Issuers are in default under any of the terms, covenants or provisions of any of the Management Agreements and Manager knows of no event which, but for the passage of time or the giving of notice or both, would constitute an event of default under any of the Management Agreements, (c) neither Manager nor Issuers have commenced any action or given or received any notice for the purpose of terminating any of the Management Agreements, and (d) the Management Fees and all other sums due and payable to the Manager under the Management Agreements as of the date hereof have been paid in full.

5.    **Agreement by Issuers and Manager**.  Issuers and Manager hereby agree that upon the occurrence of an Event of Default under the Financing Documents during the term of this Assignment or upon the occurrence of any event which would entitle Trustee to terminate, or cause the termination of, any of the Management Agreements in accordance with the terms of the Financing Documents, (a) Manager shall, at the request of Trustee, continue to perform all of Manager's obligations under the terms of the Management Agreements with respect to the Properties or (b) at the option of Trustee exercised by written notice to Issuers and Manager, Issuers and Manager shall immediately terminate any or all of the Management Agreements and

Manager shall transfer its responsibility for the management of the applicable Property or Properties to a Qualified Manager selected by Trustee.

6. **Receipt of Management Fees**. Issuers and Manager hereby agree that Manager shall not be entitled to receive any Management Fees or other fee, commission or other amount payable to Manager under the Management Agreements for and during any period of time that any Event of Default has occurred and is continuing; provided, however, that notwithstanding anything to the contrary, (a) Manager shall not be obligated to return or refund to Trustee any Management Fee or other fee, commission or other amount already received by Manager prior to the occurrence of the Event of Default, and to which Manager was entitled under this Assignment, and (b) in the event Issuers lose possession of the Properties in connection with exercise by Trustee of its rights or remedies pursuant to this Assignment, the Security Trust Agreement, the Indenture or the other Financing Documents, Manager shall be entitled to collect any Management Fee or other fee, commission or other amount accrued but unpaid prior to the occurrence of the Event of Default and to which Manager was entitled under this Assignment..

7. **Consent and Agreement by Manager**. Manager hereby acknowledges and consents to this Assignment and the terms and provisions of Sections 7.01, 7.02 and 9.04 of the Indenture. Manager agrees that it will act in conformity with the provisions of this Assignment, such provisions of the Indenture and Trustee's rights hereunder or otherwise related to the Management Agreements. In the event that the responsibility for the management of any Property is transferred from Manager in accordance with the provisions hereof, Manager shall, and hereby agrees to, fully cooperate in transferring its responsibility to a Qualified Manager and effectuate such transfer no later than thirty (30) days from the date the applicable Management Agreement is terminated. Further, Manager hereby agrees (a) not to contest or impede the exercise by Trustee of any right it has under or in connection with this Assignment and (b) that it shall, in the manner provided for in this Assignment, give at least thirty (30) days prior written notice to Trustee of its intention to terminate a Management Agreement or otherwise discontinue its management of any Property.

8. **Trustee's Agreement.** So long as an Event of Default has not occurred, Trustee agrees to permit any sums due to Issuers under the Management Agreements to be paid to Issuers pursuant to the Cash Management Agreement.

9. **Further Assurances.** Manager further agrees to (a) execute such affidavits and certificates as Trustee shall require to further evidence the agreements herein contained, (b) on request from Trustee, furnish Trustee with copies of such information as Issuers are entitled to receive under the Management Agreements and (c) cooperate with Trustee's representative in any inspection of all or any portion of any Property. Manager hereby acknowledges that some, or all, permits, licenses and authorizations necessary for the use, operation and maintenance of the Properties (collectively, the "**Permits**") may be held by, or on behalf of, the Manager. By executing this Assignment, Manager (i) agrees that it is holding or providing all such Permits for the benefit of Issuers and (ii) agrees that as security for the repayment of the Debt by Issuers in accordance with the Indenture, to the extent permitted by applicable law, Manager hereby grants to Trustee a lien and security interest in and to the Permits. Moreover, Manager hereby agrees that, upon an Event of Default, it will assign the

Permits to Trustee if such Permits are assignable under applicable Mexican law or otherwise continue to hold such Permits for the benefit of Noteholders until such time as Trustee can obtain such Permits in favor of Trustee in its own name or the name of a nominee for the benefit of Noteholders.

10. **Assignment of Proceeds**. Manager acknowledges that, as further security for the Notes and while the Issuers' Obligations (as such term is defined in the Cash Management Agreement) are outstanding, (a) Issuers have assigned to Trustee for the benefit of Noteholders, among other things, all of Issuers' right, title and interest in and to all of the revenues of the Properties and (b) Issuers, Manager and Trustee, among others, have entered into that certain Cash Management Agreement of even date herewith (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Cash Management Agreement**"), pursuant to which Issuers have agreed that any Rents, and other income and proceeds from the Properties are to be deposited directly into an account established pursuant to the Cash Management Agreement.

11. **Manager Not Entitled to Rents**. Manager acknowledges and agrees that it is collecting and processing the Rents solely as the agent for the Issuers and Manager has no right to, or title in, the Rents. Notwithstanding anything to the contrary in the Management Agreements, the Manager acknowledges and agrees that the Rents are the sole property of the Issuers, encumbered by the lien of the Security Trust Agreement and other Financing Documents in favor of Trustee for the benefit of Noteholders. In any bankruptcy, insolvency or similar proceeding the Manager, or any trustee acting on behalf of the Manager, waives any claim to the Rents other than as such Rents may be used to pay the fees and compensation of the Manager pursuant to the terms and conditions of the Management Agreements.

12. **Intentionally Omitted**.

13. **Intentionally Omitted**.

14. **Governing Law**. (A) THIS ASSIGNMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, THE NOTES WERE ISSUED BY ISSUERS AND ACCEPTED BY TRUSTEE IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTES DELIVERED PURSUANT TO THE INDENTURE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS ASSIGNMENT, THE INDENTURE, THE NOTES AND THE OTHER FINANCING DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED

**PURSUANT HERETO AND PURSUANT TO THE SECURITY TRUST AGREEMENT AND THE PLEDGE AGREEMENT, SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE OR COUNTRY IN WHICH THE PROPERTIES ARE LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH COUNTRY, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL FINANCING DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER EXCEPT FOR THE SECURITY TRUST AGREEMENT AND THE PLEDGE AGREEMENT, BOTH OF WHICH SHALL BE GOVERNED BY THE LAWS OF MEXICO.  TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HERETO HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS ASSIGNMENT, THE INDENTURE, THE NOTE AND THE OTHER FINANCING DOCUMENTS, AND THIS ASSIGNMENT, THE INDENTURE, THE NOTE AND THE OTHER FINANCING DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

**(B)   ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST MANAGER, TRUSTEE OR ISSUERS ARISING OUT OF OR RELATING TO THIS ASSIGNMENT, THE INDENTURE, THE NOTE OR THE OTHER FINANCING DOCUMENTS MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND EACH OF THE PARTIES HERETO WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.  EACH ISSUER AND MANAGER DOES HEREBY DESIGNATE AND APPOINT, WITH DOMICILE AT:**

> **CT Corporation**
> **111 Eighth Avenue**
> **New York, New York 10011**

**AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND NOTICE OF SAID SERVICE MAILED OR DELIVERED TO ASSIGNMENT IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON ISSUERS AND MANAGER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.  ISSUERS AND MANAGER (I) SHALL GIVE PROMPT NOTICE TO TRUSTEE OF ANY CHANGED ADDRESS OF THEIR AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME**

**DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.**

15. **Notices.** All notices, consents, approvals and requests required or permitted hereunder shall be delivered in accordance with Section 14.03 of the Indenture and the following:

>If to Manager:   Insurgentes Sur 1999
>                 Colonia Guadalupe Inn
>                 Delegación Alvaro Obregón
>                 México, Distrito Federal 01020
>                 Attention: Angel Maldonado Salgado, Chief Financial Officer
>                 Fax: (5255) 5627 8891
>
>With a copy to:  Greenberg Traurig, LLP
>                 2450 Colorado Avenue, Suite 400 East
>                 Santa Monica, California 90404
>                 Attention:  Scott A. Preston, Esq.
>                 Facsimile No.: (310) 586-0221

16. **No Oral Change.** This Assignment may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of any Issuer, Trustee or Manager, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

17. **Liability.** This Assignment shall be binding upon and inure to the benefit of Issuers and Trustee and their respective successors and assigns forever.

18. **Inapplicable Provisions.** If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

19. **Headings, etc.** The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

20. **Duplicate Originals, Counterparts.** This Assignment may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

USActive 5342416.4

21. **Number and Gender.** Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

22. **Miscellaneous.** (a) Wherever pursuant to this Assignment (i) Trustee, on the behalf of Noteholders, exercises any right given to it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Trustee or (iii) any other decision or determination is to be made by Trustee, the decision of Trustee to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Trustee, shall be in the sole but commercially reasonable discretion of Trustee (or the Servicer on its behalf) and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

(b) Wherever pursuant to this Assignment it is provided that Issuers shall pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable and duly documented legal fees and disbursements of Trustee and Servicer, whether of retained firms, the reimbursement for the expenses of in-house staff of trustee or Servicer, or otherwise.

(c) If more than one Person has executed this Assignment as "Issuer" or as "Manager", the obligations of all such Persons hereunder shall be joint and several.

23. **Defined Terms.** Any capitalized terms not otherwise defined or referenced herein shall be defined as set forth in the Indenture.

24. **Servicer**. This Assignment shall be enforced, and all associated rights and discretion shall be exercised, by the Servicer on behalf of the Trustee for the benefit of the Noteholders, and all approvals or consents to be given or withheld by the Trustee, related documents to be delivered to the Trustee, amounts to be deposited with the Trustee and all accounts to be maintained by the Trustee shall be so given or withheld, delivered, deposited and maintained in each case by the Servicer on behalf of the Trustee for the benefit of the Noteholders.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date and year first written above.

ISSUERS:

**PROMOTORA DE INMUEBLES DEL CARIBE, S.A. DE C.V.**

By: _____
   Name: Agustin Garcia Bolaños
   Title: Legal Representative

**CONSORCIO INMOBILIARIO CANCÚN, S.A. DE C.V.**

By: _____
   Name: Agustin Garcia Bolaños
   Title: Legal Representative

**DESARROLLO TURÍSTICO PIRÁMIDES CANCÚN, S.A. DE C.V.**

By: _____
   Name: Agustin Garcia Bolaños
   Title: Legal Representative

**COZUMEL CARIBE, S.A. DE C.V.**

By: _____
   Name: Agustin Garcia Bolaños
   Title: Legal Representative

*[SIGNATURES CONTINUE ON FOLLOWING PAGE]*

**INMOBILIARIA CANCÚN CARIBE, S.A. DE C.V.**

By: _____
Name: Agustin Garcia Bolaños
Title: Legal Representative

**COMERCIALIZADORA Y DESARROLLADORA OCEAN, S.A. DE C.V.**

By: _____
Name: Agustin Garcia Bolaños
Title: Legal Representative

**DESARROLLADORA INMOBILIARIA DEL SUR, S.A. DE C.V.**

By: _____
Name: Agustin Garcia Bolaños
Title: Legal Representative

By: _____
Name: Jaime Marquez Vargas
Title: Legal Representative

**SERVICIOS ADMINISTRATIVOS ETISA, S.A. DE C.V.**

By: _____
Name: Agustin Garcia Bolaños
Title: Legal Representative

**TRUSTEE:**

**LASALLE BANK NATIONAL ASSOCIATION,**
as Trustee

By: _____
Name:
Title:  Michelle G. Duffy
         Assistant Vice President

*[SIGNATURES CONTINUE ON FOLLOWING PAGE]*

**OPYSA:**

**OPERACIÓN Y SUPERVISIÓN DE HOTELES, S.A. DE C.V.**

By: _____
Name: Agustín García
Title: Legal Representative

*[SIGNATURES CONTINUE ON FOLLOWING PAGE]*