USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re Application of OPERACION Y SUPERVISION de HOTELES, S.A. de C.V. for an Order to Conduct Discovery for Use in a Foreign Proceeding

**MEMORANDUM OPINION & ORDER**

14 Misc. 82 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Non-party Thomas Ruffing brings this motion pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure to quash a subpoena served upon him by Operación y Supervisión de Hoteles, S.A. de C.V. ("OSH") and to extend the time for compliance with the subpoena. For the reasons set forth below, Ruffing's motion will be denied.

## BACKGROUND

The subpoena at issue relates to a litigation pending before the Federal District Court in Mexico City (the "Mexican Proceeding"). <u>OPYSSA v. Promotor de Inmuebles del Caribe, S.A. de C.V., et al.</u>, Case No. 479/2010-IV (6th Dist. Ct., Mexico City). OSH, a Mexican hotel management company, is involved in litigation with Bank of America ("BoA") and Promotora de Inmuebles del Caribe, S.A. de C.V. ("PIC") in relation to a 1994 hotel management agreement for the operation of hotel properties in Cancun, Mexico. (Mendez Decl. (Dkt. No. 9) ¶ 3) OSH claims it is entitled to management fees – including charges for taxes and regulatory fees – pursuant to that agreement, in which OSH agreed to manage certain hotel properties, including Hotel Park Royal in Cancun, Mexico, in exchange for management fees from PIC. (Id. ¶ 3, 5, 6, 10)

In 2006, PIC entered into a cash management agreement in relation to a $103 million loan from BoA, which provided that all income PIC generated through Hotel Park Royal be kept in a "Peso Lockbox Account" controlled by BoA. (Id. ¶¶ 3-4) BoA collected all receivables in connection with the operation of Hotel Park Royal; accordingly, PIC received no income from that property. (Id. ¶ 5) PIC submitted an estimate of OSH's disbursements to CT Investment Management Co., LLC ("CTIM"), the servicing agency for the loan, which then reviewed those estimates and released funds to OSH from the Peso Lockbox Account controlled by BoA. (Id. ¶ 5-6)

In 2010, PIC submitted estimates for OSH that included charges for Value Added Tax and Accommodation Tax – which were supposed to be paid to the Mexican tax authorities – as well as charges for operating on a Federal Maritime Land Zone in Mexico. (Id. ¶¶ 6-7) In response, Ruffing – as CTIM's Chief Credit Officer[1] – instructed BoA to withhold from PIC the amounts corresponding to the Value Added Tax and Accommodation Tax that were collected due to Hotel Park Royal operations, and BoA then refused to approve the expenditures. (Id. ¶¶ 3, 4, 7) Although PIC sent several written requests explaining that withholding taxes could subject PIC to criminal sanctions by the Mexican tax authorities, BoA never responded. (Id. ¶ 8) In May 2010, Ruffing wrote a letter to PIC and other entities refusing to release funds sufficient to pay the taxes. (Id., Ex. 1) OSH alleges in the Mexican Proceeding that this failure to release funds from the Peso Lockbox Account constitutes a breach of the 1994 hotel management agreement and that, as a result, OSH has suffered losses and damages. (Id. ¶ 10)

---

[1] In 2012, CTIM was acquired by Blackstone Real Estate Debt Strategies. As of April 2014, Ruffing held the position of Managing Director of Asset Management at Blackstone. (Mendez Decl. (Dkt. No. 9) ¶ 3)

On March 3, 2014, Judge Enrique Claudio Gonzalez Meyenberg of the Federal District Court of Mexico City issued a letter rogatory to the U.S. Justice Department to facilitate the testimony of Ruffing. (Id., Ex. 2) In the letter rogatory, the Mexican Judge approved fifteen questions for OSH to ask Ruffing.[2] (Id.) The fifteen questions, according to a certified translation, are as follows:

(1) What are the parties of this procedure?
(2) Why does he know them?
(3) What is the relation between the parties of the procedure?
(4) How did such relation arise?
(5) How does he know about relation between the parties?
(6) How was the relation between the parties documented?
(7) The reason why is Operacion y Supervision de los Hoteles S.A. de C.V., in possession of the real estate located in Lot 18, Section I-B of the Hotel Zone of Cancun, Quintana Roo?
(8) The reason why the Promotora de Inmuebles del Caribe S.A. de C.V., executed with Bank of America National Association (previously La Salle Bank National Association) the Contract of Cash Handling dated October 3 2006.
(9) The reason why the Promotora de Inmuebles del Caribe S.A. de C.V., executed with Bank of America National Association (previously La Salle Bank National Association) the Assignment of Administration Guarantee dated October 3, 2006.
(10) If he personally knows Augustin Garcia Bolaños Cacho.
(11) How did he know Augustin Garcia Bolaños Cacho?
(12) If he knows where Augustin Garcia Bolaños Cacho was on October 3, 2006.
(13) If he knows Augustin Garcia Bolaños Cacho was outside the country (Mexico) during the month of October 2006.
(14) Does the witness know and is aware of everything he has deposed?
(15) The witness must state on what he bases his affirmations.

(Modiri Decl. (Dkt. No. 10), Ex. A at 3)

---

[2] The Mexican Judge issued an ancillary letter rogatory on September 9, 2014, requesting the assistance of the Honorable Paul G. Gardephe "in the resolution of the ancillary action for annulment brought by Thomas Ruffing, to receive the testimonial evidence of said witness, evidence that is admitted and submitted by the complainant in the case records on this action and the matter in dispute involves the fulfillment of the hotel management contract made between the complainant and [PIC], dated [February 1, 1994], and also the rescission of the cash management agreement of [October 3, 2006], and the annulment of the management assignment agreement entered into on that same date and its consequences, requested by letter rogatory 2/2014." (OSH Oct. 1, 2014 Letter (Dkt. No. 17), Ex. 1 at 11-12)

On March 25, 2014, Judge Harold Baer, sitting as the Part One Judge in the U.S. District Court for the Southern District of New York, granted OSH's application for an order to take discovery from Ruffing for use in the Mexican Proceeding, pursuant to 28 U.S.C. § 1782. On April 1, 2014, OSH served upon Ruffing the subpoena at issue, which directs him to answer the fifteen questions contained in the letter rogatory before a court reporter. (Modiri Decl., Ex. A (Dkt. No. 10))

OSH argues that the questions are relevant to its claim that the contract at issue was signed and negotiated in Mexico, and that the contract's choice of law provision providing for the application of New York law is not valid under Mexican law. (Mendez Decl. (Dkt. No. 9) ¶ 11) OSH explains that "Mexican law provides that notwithstanding a choice of law provision in the contract, if the negotiation and transactions relating to the contract took place in Mexico, then Mexican law will be applied." (OSH Opp. Br. (Dkt. No. 11) at 4) According to OSH, Ruffing's refusal to release the funds shows that he has knowledge of facts relevant to this case. (Mendez Decl. (Dkt. No. 9) ¶ 15) OSH argues that Ruffing's testimony is necessary to a determination of whether Mexican or New York law applies. (OSH Opp. Br. (Dkt. No. 11) at 4)

On April 17, 2014, Ruffing filed a declaration in support of his motion to quash OSH's subpoena. (Dkt. No. 8) Ruffing states that he is "not a signatory to the agreements that are referenced in the attachment to the subpoena and [he] had no involvement in negotiating those agreements," and that he "do[es] not personally know Augustin Garcia Bolaños Cacho and [he does] not have any personal knowledge concerning Mr. Bolaños Cacho's whereabouts in 2006." (Id. ¶¶ 3-4) In response, OSH argues that "[t]he fact that Mr. Ruffing would even claim to have no knowledge as to [the fifteen] questions is the <u>very reason</u> why his testimony is so relevant to the Mexican proceeding." (OSH Opp. Br. (Dkt. No. 11) at 2) (emphasis in original).

4

## DISCUSSION

### I. LEGAL STANDARD

Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

> The statute authorizes district courts to grant such relief only where (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or "any interested person."

In re OOO Promnefstroy, No. Misc. 19-99 (RJS), 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) (citing Schmitz v. Berstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)).

"'[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion.'" Schmitz, 376 F.3d at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 78 (2d Cir. 1997)); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) – both over whether to grant a discovery order and, if so, what limits to place on that discovery.") (citing S.Rep. No. 88–1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788). "This discretion, however, is not boundless. Rather, we have held that 'district courts

must exercise their discretion under § 1782 in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. . . .""" Schmitz, 376 F.3d at 84 (quoting In re Metallgesellschaft AG, 121 F.3d at 79 (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992))). Courts should likewise consider

>   (1)   [w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
>
>   (2)   [t]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
>
>   (3)   [w]hether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
>   (4)   [w]hether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)).

"A court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure." In re Auto-Guadeloupe Investissement S.A., No. 12 MC 221 (RPP), 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012); see In re Gushlak, No. 11-MC-218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("Section 1782(a) mandates that discovery under the statute be produced 'in accordance with the Federal Rules of Civil Procedure.' Accordingly, the court is guided by Rules 26 and 45, which govern third-party discovery.") (citation omitted) aff'd sub nom. Gushlak v. Gushlak, 486 F. App'x 215 (2d Cir. 2012).

6

"Under Rule 26(b)(1), parties are entitled to discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense,' to the extent the request is 'reasonably calculated to lead to the discovery of admissible evidence.'" In re Gushlak, 2011 WL 3651268, at *6 (quoting Fed. R. Civ. P. 26(b)(1)). This standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

"Federal Rule of Civil Procedure 45[(d)](3)(A)(iv) provides that a court must quash or modify a subpoena that 'subjects a person to undue burden.'" Sanofi-Synthelabo v. Apotex Inc., No. 02 Civ. 2255 (SHS), 2009 WL 5247497, at *3 (S.D.N.Y. Dec. 30, 2009) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)) aff'd sub nom. Sanofi-Aventis v. Apotex Inc., 659 F.3d 1171 (Fed. Cir. 2011). "Whether a subpoena subjects a witness to undue burden within the meaning of [Rule 45(d)(3)(A)(iv)] 'depends upon such factors as relevance . . . and the burden imposed.'" Kirschner v. Klemons, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (quoting Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)) (internal quotations omitted).

"The movant . . . carr[ies] the burden of proving that a subpoena imposes an undue burden on a witness." Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). "Because the burden is on the party seeking to quash a subpoena, . . . that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance. . . . [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." Kirschner, 2005 WL 1214330, at

7

*2 (citing Concord Boat, 169 F.R.D. at 48). "A subpoena that 'pursues material with little apparent or likely relevance to the subject matter,' however, is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." Id. at *2 (quoting Concord Boat Corp., 169 F.R.D. at 50).

## II.  ANALYSIS

### A.  Statutory Factors

Ruffing does not dispute that OSH's application pursuant to Section 1782 satisfies the statutory factors. First, Ruffing resides and can be found in the Southern District of New York, given that he resides in Westchester County and maintains a place of business in Manhattan. (See Modiri Decl. (Dkt. No. 10), Ex. B) Second, the discovery OSH seeks is for use in OPYSSA v. Promotora de Inmuebles del Caribe, S.A. de C.V., et al., Case No. 479/2010-IV (6th Dist. Ct., Mexico City), a foreign proceeding currently pending before the Federal District Court in Mexico City. Third, the order was made pursuant to a letter rogatory issued by the Federal District Court in Mexico City, a foreign tribunal, and pursuant to an application made by OSH, an interested person. Accordingly, this Court is "free to grant discovery in its discretion." Schmitz, 376 F.3d at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d at 78).

### B.  Discretionary Factors

In determining whether to grant Ruffing's motion to quash the subpoena served on him pursuant to Section 1782, this Court must consider the four factors articulated in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Analysis of these factors indicates that the motion to quash should be denied.

### 1.     Whether Ruffing Is a Participant in the Mexican Proceeding

In Intel, the Supreme Court notes that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for [Section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Intel, 542 U.S. at 264.

While conceding that he is not a participant in the Mexican Proceeding, Ruffing argues that the foreign tribunal can obtain the information sought in the subpoena from other sources. (See Ruffing Br. (Dkt. No. 6) at 7-8) As to questions one through six of the subpoena, for example – which are aimed at establishing Ruffing's knowledge of matters relevant to the Mexican Proceeding, including the identity of the parties and their relationships with one another – Ruffing argues that the information sought in these general questions is "readily obtainable from the parties in the Mexican Proceeding," including OSH. (Id. at 7)

In arguing that the information sought in the subpoena is available from the parties in the Mexican Proceeding, Ruffing relies on In re OOO Promnefstroy, No. M. 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009). In In re OOO Promnefstroy, Judge Sullivan determined that documents requested in a subpoena served on a non-party to a foreign proceeding were within the reach of the foreign tribunal, given that those documents could be obtained by the parties to that proceeding. Id. at *5-7. Judge Sullivan explained that "it is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus." Id. at *5. He cited several cases in support of this proposition, all of which provide that analysis of the first Intel factor requires an assessment of whether the particular document or testimony sought is within the

9

jurisdictional reach of the foreign tribunal, not whether the individual from whom discovery is sought is within the tribunal's jurisdictional reach. Id. at *5 (citing Schmitz, 376 F.3d at 85; In re Godfrey, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007); Microsoft, 428 F. Supp. at 194).

Ruffing's reliance on In re OOO Promnefstroy and the cases cited in that opinion is misguided, however. These cases all focus on requests for the production of documents from non-party entities, and not on requests for the testimony of a non-party witness. Although parties to the foreign proceeding here may possess information that relates to the subpoena's introductory questions, the foreign tribunal has not obtained Ruffing's testimony on any of these matters, nor does it have the ability to compel such testimony. Although Ruffing asserts that he had no involvement in and had no knowledge of the 2006 agreements referenced in the subpoena – given his refusal to release funds to PIC in 2010 – it is clear that he was involved to some extent in the events leading up to the filing of the lawsuit in Mexico. (See Mendez Decl. (Dkt. No. 9), Ex. 1) As OSH argues, even if Ruffing testifies that he lacks the knowledge necessary to answer the questions in the subpoena, that testimony is relevant in the Mexican Proceeding on the choice of law question.[3]

Because Ruffing is not a party to the Mexican Proceeding and the foreign tribunal lacks jurisdiction to compel his testimony, analysis of the first Intel factor suggests that the subpoena should be enforced.

### 2. Whether the Mexican Court Is Receptive to U.S. Judicial Assistance

The second Intel factor directs courts to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542

---

[3] The fact that the Mexican judge approved the fifteen questions set forth in the letter rogatory also indicates that Ruffing's testimony on these points is relevant to the Mexican Proceeding.

U.S. at 264. Ruffing does not dispute that the Mexican Court is receptive to judicial assistance from the United States in this case. Given that the Mexican judge – by issuing the letter rogatory – explicitly asked for U.S. judicial assistance in taking Ruffing's testimony, and given that the Mexican judge approved all fifteen questions listed in OSH's subpoena, it is clear that the second Intel factor favors enforcement of the subpoena.

### 3. Whether the Subpoena Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third Intel factor requires a court to "consider whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. Given the Mexican judge's approval of the fifteen questions in the subpoena and his issuance of the letter rogatory asking for assistance in obtaining Ruffing's testimony, it is clear that OSH's subpoena does not constitute an attempt to circumvent any restrictions or policies of Mexico.[4]

Ruffing argues, however, that OSH's attempt to elicit testimony from Ruffing is contrary to the policies of the United States, because in seeking to obtain evidence supporting its argument that Mexican law should govern the contract, OSH "seeks to invalidate financial contracts expressly governed by New York law." (Ruffing Reply Br. (Dkt. No. 12) at 7 (citing Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 521-22 (2d Cir. 1985) ("The United States has an interest in ensuring that creditors entitled to payment in the United States in United States dollars under contracts subject to the jurisdiction of United States courts

---

[4] The form of the questions also conform to principles of Mexican law. Although a number of the questions seek very general information – such as "What are the parties of [the Mexican Proceeding]?" – OSH explains that "Mexican law does not allow for a witness to be asked direct questions designed to . . . get a specific response, [and] that is the reason the questions are more general. The law also requires that a witness be asked if they know the parties to the proceeding and set forth the basis for their knowledge." (Mendez Decl. (Dkt. No. 9) ¶ 13)

11

may assume that, except under the most extraordinary circumstances, their rights will be determined in accordance with recognized principles of contract law.")))

Ruffing's arguments are misguided. Even assuming that OSH seeks Ruffing's testimony to support an argument that the New York choice of law provision in the contract should not be honored, there is no suggestion that OSH has an improper motive in doing so, or that OSH is attempting to invalidate the entire agreement. Instead, OSH is merely seeking to obtain evidence that may bear on the determination – under Mexican law – of whether New York or Mexican law applies in the Mexican Proceeding. OSH's effort to elicit information that may be relevant to determining the choice of law issue does not constitute a concealed attempt to circumvent U.S. policies.

In any event, case law suggests that the primary focus of the third Intel factor is not circumvention of U.S. policies, but rather whether a party is engaging in "blatant end-run[s] around 'foreign proof-gathering restrictions or other policies of a foreign country.'" See Microsoft, 428 F. Supp. 2d at 195 (quoting Intel, 542 U.S. at 265); see also In re Kreke Immobilien KG, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) ("[T]his factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'") (quoting Microsoft, 428 F. Supp. 2d at 195); In re OOO Promnefstroy, 2009 WL 3335608, at *8 ("Under the third discretionary factor, district courts may consider how the applicant fared or is faring in the foreign jurisdiction in its attempts to procure the same information it now seeks under [Section] 1782.") (citing Microsoft, 428 F. Supp. 2d at 195).

Given that (1) the primary focus of the third Intel factor is on whether a party is seeking to circumvent the law or policies of a foreign country; and (2) OSH's subpoena clearly

12

complies with Mexican policies, on balance the third Intel factor weighs in favor of enforcing OSH's subpoena.

### 4. Whether the Subpoena Is Unduly Burdensome

The final Intel factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests." Microsoft, 428 F. Supp. 2d at 193 (citing Intel, 542 U.S. at 265). Ruffing argues that the subpoena is unduly burdensome because it requests discovery from a non-party that would otherwise be readily obtainable through other means. (Ruffing Br. (Dkt. No. 6) at 7) As discussed above, however, this argument is misguided. It is Ruffing's testimony – not merely the information he might provide in response to the subpoena's questions – that is important to OSH's claims in the Mexican proceeding (see OSH Opp. Br. (Dkt. No. 11) at 4), and the foreign tribunal does not have the ability to compel Ruffing's testimony.

Ruffing also argues that a non-party witness may be excused from testifying at a deposition where the witness states that he lacks personal knowledge of the matters at issue. (Ruffing Br. (Dkt. No. 6) at 8-10) The cases Ruffing cites do not support such a broad proposition, however.

In Koch v. Pechota, No. 10 Civ. 9152, 2013 WL 5996061 (S.D.N.Y. Nov. 8, 2013), the court held that a non-party witness was not required to testify where she had already been deposed on the same issue in a related action, and where Plaintiff could not show that the witness's testimony was relevant to her claims. Id. at *2. Here, there is no evidence that Ruffing has provided any prior testimony concerning the matters referenced in the subpoena. To the extent that Ruffing argues that he "has already provided [testimony] in a sworn declaration," and that there is no distinction between deposition testimony and a declaration (see Ruffing Reply

13

Br. (Dkt. No. 12) at 3), this Court rejects that argument. Ruffing's declaration pursuant to 28 U.S.C. § 1746 is not equivalent to deposition testimony, either practically or as a matter of law. See 28 U.S.C. § 1746 ("Whenever, under any law of the United States . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . in writing of the person making the same (other than a deposition, or an oath of office . . .), such matter may, with like force and effect, be . . . proved by the unsworn declaration . . . in writing of such person. . . .") (emphasis added).

Ruffing also cites Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co., No. 05 Civ. 1031 (RJH) (HBP), 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) and Bouchard v. New York Archdiocese, No. 04 Civ. 9978 (CSH) (HBP), 2007 WL 2728666 (S.D.N.Y. Sept. 19, 2007), order aff'd and remanded, No. 04 Civ. 9978 (CSH) (HBP), 2007 WL 4563492 (S.D.N.Y. Dec. 18, 2007) for the proposition that a declaration is sufficient to demonstrate a witness's lack of knowledge. (See Ruffing Reply Br. (Dkt. No. 12) at 3) In Retail Brand Alliance and Bouchard, Judge Pitman found that a witness's affidavit stating that he had no personal knowledge of the claims at issue satisfied his initial burden of demonstrating a lack of relevant knowledge. See Retail Brand Alliance, 2008 WL 622810, at *6; Bouchard, 2007 WL 2728666, at *4. Nevertheless, Judge Pitman observed that parties to an action are ordinarily entitled to test a potential witness's claim that he has no relevant knowledge, and in each case Judge Pitman ruled that the witness would be required – in the first instance – to respond to written questions. This ruling was made without prejudice to an application to take the witness's deposition, if the responses to the written questions demonstrated that the witness had relevant knowledge. See Retail Brand Alliance, 2008 WL 622810, at *6; Bouchard, 2007 WL 2728666, at *4-5.

Nothing in <u>Retail Brand Alliance</u> or <u>Bouchard</u> suggests that the subpoena at issue here should be quashed. There was little or no evidence in these cases that the witnesses at issue – the chief executive officer of a major corporation and the Archbishop of New York – had any relevant knowledge. Here, Ruffing was directly involved in the decision to withhold from PIC the amounts corresponding to the taxes in question. (Mendez Decl. (Dkt. No. 9) ¶ 4, Ex. 1) Moreover, Ruffing has not demonstrated that requiring him to answer fifteen questions before a court reporter is unduly burdensome, nor has he "set[] forth the manner and extent of the burden and the probable negative consequences of insisting on compliance" with the subpoena. <u>Kirschner</u>, 2005 WL 1214330, at *2.

In sum, analysis of all four <u>Intel</u> factors indicates that the motion to quash should be denied. Enforcing the subpoena furthers the "twin aims" of Section 1782 by "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." <u>In re Malev Hungarian Airlines</u>, 964 F.2d at 100.

## CONCLUSION

For the reasons stated above, Ruffing's motion to quash is denied.  (Dkt. No. 5) The Clerk of Court is respectfully directed to terminate the motion.

Dated: New York, New York
      December 31, 2014

SO ORDERED.

*Paul G. Gardephe* (signature)
Paul G. Gardephe
United States District Judge